**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**JEFFREY BLAGG**                                                                                          **PLAINTIFF**

**v.**                                          **CASE NO. 3:19-CV-00197-JTK**

**ANDREW SAUL,[1] Commissioner,
Social Security Administration**                                                **DEFENDANT**

**ORDER**

**I.     Introduction:**

On January 23, 2017, Plaintiff Jeffrey Blagg applied for supplemental security income (SSI) and on January 25, 2017, he applied for disability insurance benefits (DIB), alleging disability beginning on January 1, 2015. (SSA record "R." at 10) Blagg's claims were denied initially (R. 10, 53-54) and upon reconsideration. (R. 10, 85-86) After a hearing, the Administrative Law Judge[2] (ALJ) denied the application on February 14, 2019. (R. 10-21) The Appeals Council denied Blagg's request for review (R. 1-6); therefore, the ALJ's decision now stands as the final decision of the Commissioner.

Blagg filed this case seeking judicial review of the decision denying him benefits. (Doc. 2) For the reasons stated below, the Court[3] affirms the decision of the Commissioner.

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to FED. R. CIV. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] The Honorable Robert Martin.

[3] The parties have consented to jurisdiction of the United States Magistrate Judge. (Doc. 4)

## II.     The ALJ's Decision:

The ALJ found that Blagg's earnings showed he had acquired sufficient quarters of coverage to remain insured through December 31, 2019. (R. 10) The ALJ also found that Blagg had not engaged in substantial gainful activity since January 1, 2015 and that he had the following severe impairments: chronic obstructive pulmonary disease (COPD), anxiety, and depression. (R. 12)

After finding that Blagg's impairments did not meet or equal a listed impairment (R. 12-14), the ALJ determined that Blagg had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c). (R. 14) Additionally, Blagg must avoid concentrated exposure to extreme heat, cold, dust, odors, fumes, and pulmonary irritants and avoid areas with poor ventilation. (*Id.*) The ALJ also limited Blagg's work to simple, routine, and repetitive tasks; however, it was determined that Blagg could interact appropriately with supervisors, co-workers and the general public; could adapt to occasional changes in the workplace, and could concentrate, persist, and maintain pace for such tasks with normal breaks throughout the day. (*Id.*)

The ALJ concluded that Blagg was unable to perform his past relevant work as an operating engineer. (R. 19) The ALJ further relied on a Vocational Expert (VE) who testified that, based on Blagg's age, education, work experience, and RFC, he was capable of performing a significant number of jobs in the national economy including as a laborer of stores, hand packager, and inspector/hand packager. (R. 19-20) Based on the above, the ALJ determined that Blagg was not disabled. (R. 20)

**III.   Discussion:**

    A.      Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019); *see also* 42 U.S.C. § 405(g). "Substantial evidence" in this context means enough that "a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citing *Ash v. Colvin*, 812 F.3d 686, 689 (8th Cir. 2016)). In making this determination, the court must consider not only evidence that supports the Commissioner's decision, but also, evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence would have supported an opposite decision." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (internal citation omitted).

    B.      Discussion

In this appeal, Blagg contends that substantial evidence does not support the ALJ's decision to deny benefits. Specifically, he asserts the ALJ failed to properly consider the opinion of his treating doctor, Dr. Sumner Collum, and, as a result, failed to provide substantial evidence at Step 5 for the jobs finding. (Doc. 13 at 14). In particular, Blagg argues that the ALJ failed to give proper weight to Medical Source Statement-Physical (MSS-P) completed by Dr. Collum in August 2017. (*Id.*)

An ALJ will give a treating physician's opinion controlling weight only if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with the other substantial evidence. *Nowling v. Colvin*, 813 F.3d 1110, 1122-23 (8th Cir. 2016) (internal citations omitted). That opinion, however, "does not

3

obviate the need to evaluate the record as a whole." *Id*. (internal citation omitted). Rather, an ALJ may disregard the opinion of a treating physician when it appears inconsistent with the evidence. *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (citing *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009)). "Moreover, a treating physician's opinion that a claimant is 'disabled' or 'unable to work,' does not carry 'any special significance,' 20 C.F.R. § 416.927(e)(1), (3), because it invades the province of the Commissioner to make the ultimate determination of disability." *Davidson*, 578 F.3d at 842.

Blagg argues the ALJ's determination that he can perform medium work is inconsistent with Dr. Collum's August 2017 MSS-P findings. Dr. Collum determined that Blagg had both chronic obstructive pulmonary disease (COPD) and erythrocytosis (a blood disorder). (R. at 554-56) Dr. Collum also noted that Blagg was able to occasionally lift/carry less than 10 pounds; could stand/walk for a total of two hours in a normal workday for no more than 30 minutes at one time; could sit for about two hours in a normal workday for no more than 30 minutes at one time; would need frequent rest periods as well as longer than normal breaks, and the opportunity to shift at will from sitting to standing/walking. (R. 354-55) Finally, Dr. Collum indicated that Blagg must avoid all exposure to extreme heat and cold, high humidity, fumes, odors, dust, gas, soldering fluxes, solvents/cleaners, chemicals, and must avoid moderate exposure to perfumes and sunlight. (R. 355) Further, in both 2016 and 2017, Dr. Collum issued treating source statements finding that Blagg could not work. (R. 347, 566)

The ALJ gave little weight to Dr. Collum's MSS-P findings, noting they constituted no more than a "checklist form that includes no explanation for such

4

limitation[s]" and that the findings were inconsistent with the medical records. (R. 19) A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). The record supports the ALJ's finding.

Blagg's treatment records do not conform with Dr. Collum's assessment reflected in the MSS-P. As an example, the ALJ noted that, despite Blagg's reports of shortness of breath in October 2016, his chest X-rays were normal. (R. 15, 342) Then at a follow-up appointment in December 2016, Dr. Collum recorded Blagg's oxygen saturation was normal and assessed his COPD as moderate but stable. (R. 15, 352) Nevertheless, Dr. Collum completed a treating source statement the very same date with intensified findings. (R. 15, 347) In it, Dr. Collum changed Blagg's diagnosis from stable to severe COPD and found that he could not work. (R. 347, 351-52).

The following year, a pulmonologist confirmed that Blagg had COPD but, he could not determine the extent because Blagg's "pulmonary function test was notably inconsistent and not very useful" and his x-ray revealed "no acute chest disease." (R. 16, 364-65, 368). A pack-a-day smoker for at least 25-years, Blagg continued to ignore doctors' advice to completely quit smoking. (R. 362, 364, 412, 415-16, 434-35, 463, 466, 472-73, 500-01, 504, 506, 525, 527, 545, 547, 549, 568, 570, 573-74, 576, 578, 580, 582, 584, 597); *see Kisley v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (the ALJ correctly discounted claimant's credibility when claimant failed to stop smoking despite physician's orders).

Additionally, Blagg's medical records reflect that he reported positively to medication, had a normal gait, muscle strength, range of motion, extremity movement, and neurological function. (R. 14-19, 364, 372, 375, 379, 385, 390, 393, 409-11, 413, 416, 435-436, 464, 474, 502, 512, 519, 524, 527, 547, 571, 576-77, 582, 588, 592). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *See Mittlestedt v. Apfel*, 204 F.3d 847 852 (8th Cir. 2000). Based on the above, the ALJ found Blagg's ailments "limiting but not disabling." (R. 18) The record supports this finding.

**IV.    Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny SSI and DIB benefits. The assigned RFC properly incorporated all of the credible limitations. The ALJ made no legal error. For these reasons, Blagg's request for relief (Doc. 2) is DENIED, and the decision denying the application for benefits is AFFIRMED.

IT IS SO ORDERED this 1st day of July, 2020.

_____
UNITED STATES MAGISTRATE JUDGE